IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ALEXIS ROBERTS,

      Plaintiff,

v.                                                  CIVIL ACTION NO. 1:22CV65
                                                           (KLEEH)


EMILY BARNES, LAURIE MARINO,
TARA HULSEY, CARRIE SHOWALTER,
and KARI SAND-JECKLIN,
in their individual
and official capacities,

      Defendants.


MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

On August 12, 2022, the plaintiff, Alexis Roberts ("Roberts"), commenced this action alleging that she had been disciplined and removed from West Virginia University's Master of Science in Nursing program without fair notice or appropriate process [ECF No. 1]. She brings several claims against the defendants, Emily Barnes, Laurie Marino, Tara Hulsey, Carrie Showalter, and Kari Sand-Jecklin (collectively, "the Defendants"), in their individual and official capacities. In particular, she seeks reinstatement and monetary relief. On November 23, 2022, the Defendants moved to dismiss Roberts's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 8]. The Court heard argument on May 18, 2023. For the reasons discussed on the

**ROBERTS V. BARNES ET AL.**                                          **1:22CV65**

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

record and herein, the Court **GRANTS** the Defendants' motion and
**DISMISSES** Roberts's claims against them.

## I.   BACKGROUND

### A.   The Parties

Roberts is a licensed nurse who enrolled in West Virginia
University's ("WVU") Master of Science in Nursing program on the
Family Nurse Practitioner track in April 2020 [ECF No. 1 at ¶ 14].
Each of the defendants is affiliated with WVU or the West Virginia
University School Of Nursing ("WVUSON"). Emily Barnes ("Defendant
Barnes") is an Associate Dean of the WVUSON [ECF No. 1 at ¶ 7].
Laurie Marino ("Defendant Marino") is a WVUSON faculty member.
Id. at ¶ 8. Tara Hulsey ("Defendant Hulsey") is the Dean of the
WVUSON. Id. at ¶ 10. Kari Sand-Jecklin ("Defendant Sand-Jecklin")
is a WVU professor and a member of the WVUSON's Committee for
Academic and Professional Standards. Id. at ¶ 11. Carrie
Showalter ("Defendant Showalter") is WVU's Executive Director for
Student Conduct. Id. at ¶ 12.

### B.   Factual Allegations

During the fall 2021 semester, Roberts enrolled in NSG 714:
Primary Care of Families 2, a course co-taught by Defendants Barnes
and Marino. Id. at ¶ 15. The purpose of this course was to
facilitate "knowledge and skills basic to the health maintenance,
diagnosis, treatment, evaluation, and revision of care of

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

individuals as members of family units in the primary care setting." Id. at ¶ 16. The course syllabus noted that students would be evaluated in several different ways, including exams and two "Shadow Health" assessments. Id. at ¶¶ 17-19. Shadow Health is a virtual reality simulation in which students practice evaluating patients' health complaints. Id. at ¶ 19. Students had only one opportunity to complete the Shadow Health exams. Id.

Roberts alleges that, while completing the first Shadow Health exam in October 2021, she experienced technical difficulties which prevented her from hearing the simulated patient's heart and lung sounds. Id. at ¶¶ 23-25. Defendants Barnes and Marino did not consider these technical issues in grading the assessment. Id. at ¶ 26. Another student then advised Roberts that "the audio deficiencies in the Shadow Health assignments could be addressed through the use of Quizlet." Id. at ¶ 27. Roberts again experienced technical difficulties during the second Shadow Health exam in November 2021 and "used Quizlet to help overcome the experienced audio deficiencies." Id. at ¶ 31.

Thereafter, on November 22, 2021, Roberts and Defendant Barnes met via videoconference to discuss her second Shadow Health exam. Id. at ¶ 34. During this meeting, Roberts reported that she learned she could use Quizlet to complete the exam from another student. Id. at ¶ 36. Defendant Barnes reported Roberts for

**ROBERTS V. BARNES ET AL.**                                              **1:22CV65**

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

academic misconduct for using an unauthorized external resource. Id. at ¶¶ 35, 41.

Although the syllabus explicitly stated that course exams were to be taken "close book/closed note" and using a lockdown browser, it contained no similar warning about the Shadow Health exams. Id. at ¶¶ 18, 21. Neither of the instructors stated that external resources could not be used to complete the Shadow Health exams or that "the use of Quizlet could in any way be considered misconduct or use of unauthorized resources." Id. at ¶ 21, 28.

On December 3, 2021, Roberts met with Justine Burnett,[1] WVU's Assistant Director of the Office of Academic Integrity and Student Conduct, to discuss the academic misconduct charge that Defendant Barnes had made against her. Id. at ¶¶ 9, 42. Roberts reported that she learned of Quizlet through another student. Id. at ¶ 43. Burnette informed Roberts that Defendant Barnes had requested that she receive a failing grade for NSG 714. Id. at ¶ 45. Shortly thereafter, Burnett issued a notice letter to Roberts indicating that she had been found responsible for academic misconduct and would receive a failing grade for the second Shadow Health exam and for the course. Id. at ¶ 46.

---

[1] Roberts initially named Burnett as a defendant in this action but voluntarily dismissed all claims against her on December 28, 2022 [ECF No. 15].

**ROBERTS V. BARNES ET AL.**                                                    **1:22CV65**

Roberts appealed the decision to Defendant Hulsey, the Dean of the WVUSON.  Id. at ¶ 48.  She asserted that while other students had also used Quizlet, she was the only student being punished. Id. at ¶ 51.  She also objected to Burnette's insinuation that Roberts had refused to provide information about the other student using Quizlet.  Id. at ¶¶ 48-51.  She asserted that she had provided this information, but Burnette had failed to investigate. Id.

On December 22, 2022, the WVUSON notified Roberts that she was being dismissed from the MSN program due to her failing grade in NSG 714.  Id. at ¶ 52.  It also referred Roberts to the three-level appeal process established by the MSN Student Handbook.  Id. at ¶ 53.  Roberts initiated an appeal of her dismissal and the WVUSON allowed her to remain enrolled while she pursued her appeal. Id. at ¶ 60.

Defendant Sand-Jecklin, on behalf of the WVUSON Committee for Academic and Professional Standards, denied Roberts's Level 1 appeal on January 13, 2022.  Id. at ¶ 54.  On January 24, 2022, Defendant Hulsey denied Roberts's Level 2 appeal and the WVUSON removed her from the MSN program.  Id. at ¶ 55.  Three days later, the WVUSON sent an email to all MSN students stating that the "unauthorized use of resources, such as Quizlet (or similar tools),

**ROBERTS V. BARNES ET AL.**                                              **1:22CV65**

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

for assignments or tests is considered academic dishonesty." Id. at ¶ 64.

Roberts filed a Level 3 appeal with Richard Thomas, Associate Provost for the MSN program, who referred the matter to the Office of Student Conduct for an evidentiary hearing. Id. at ¶¶ 57-58. She alleges that this process did not provide a meaningful review of her dismissal and that the evidentiary hearing failed to consider the fact that she did not have prior notice that Quizlet was an unauthorized resource for the Shadow Health exams and that the WVUSON failed to sanction any other student for the same conduct. Id. at ¶¶ 58-59.

Based on these allegations, Roberts asserts five causes of action. In Count One, Roberts seeks a declaratory judgment finding the applicable policies unconstitutionally vague. Id. at ¶¶ 94-107. In Counts Two and Four, she alleges that the Defendants violated her right to procedural due process and 42 U.S.C. § 1983, in their official and individual capacities. Id. at ¶¶ 108-114, 124-30. In Counts Three and Five, she alleges that the Defendants violated her right to equal protection under the law and 42 U.S.C. § 1983, in their official and individual capacities. Id. at ¶¶ 115-23, 131-39.

Roberts alleges that she has suffered economic loss, diminished earning capacity, lost career and business

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

opportunities, reputational harm, mental and emotional damages, and litigation expenses. Id. at ¶ 112. She seeks several forms of relief, including (1) a declaration that the WVU Policy on Student Academic Integrity as applied violates federal due process protections (Count One); (2) injunctive relief – reinstatement, prohibition of further disciplinary action or retaliation related to this incident, and prevention of reporting to outside parties (Counts Two and Three); and (3) monetary relief – nominal, compensatory, and punitive damages (Counts Four and Five).

## II.   DISCUSSION

On November 23, 2022, the Defendants moved to dismiss Roberts's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 8]. They contend that (1) Roberts has failed to state a claim upon which relief may be granted, (2) they are entitled to qualified immunity on claims against them in their individual capacities, (3) they are immune from claims for monetary damages in their official capacities, and (4) Roberts cannot collect punitive damages because she failed to allege that the Defendants acted maliciously.

The Defendants attached six exhibits to their motion to dismiss. The facts established by these exhibits contradict several of the allegations in Roberts's complaint and show that Roberts received additional process that she did not describe.

## MEMORANDUM OPINION AND ORDER GRANTING
## MOTION TO DISMISS [ECF NO. 8]

Before addressing the merits of the motion to dismiss, the Court must determine which, if any, of these exhibits it can consider in ruling on the Defendants' motion.

**A.   Consideration of the Defendants' Exhibits**

According to the Defendants, the Court can consider all of their supporting exhibits because Roberts had actual notice of each and relied upon each in framing her complaint [ECF No. 17 at 2-3].  Roberts contends that the Court should not consider any of the supporting exhibits because none carries independent legal significance or gives rise to her claims [ECF No. 13 at 8-9].

Generally, when a defendant moves to dismiss under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the "documents attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011).  If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  Nevertheless, courts may consider documents attached to a motion to dismiss without converting it to a motion for summary judgment if the documents are "integral to and explicitly relied on in the complaint," and "the plaintiffs do not challenge [the documents']

ROBERTS V. BARNES ET AL.                                          1:22CV65

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

authenticity." <u>Zak v. Chelsea Therapeutics Intern., Ltd.</u>, 780 F.3d 597, 606-07 (4th Cir. 2015).

Upon careful review, the Court concludes that it properly can consider each of the Defendants' supporting exhibits without converting their motion to dismiss into one for summary judgment.

### i.    The Defendants' exhibits are integral to the complaint.

A document is "integral" to a complaint if it is quoted, relied upon, or incorporated by reference in the complaint. <u>Gasner v. Cnty. of Dinwiddie</u>, 162 F.R.D. 280, 282 (E.D. Va. 1995).  An integral document also is "central or integral to the claim in the sense that its very existence, and not the mere information it contains, gives rise to the legal rights asserted." <u>Johnson v. W. Va. Univ. Bd. of Governors</u>, 2022 WL 908496, at *5 (S.D.W. Va. Mar. 28, 2022); <u>see also</u> <u>Walker v. S.W.I.F.T. SCRL</u>, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007).  The Defendants' exhibits meet this standard because Roberts's claims arise out of their supporting documents and she quoted, relied upon, or incorporated by reference each in the complaint.

### 1.    Exhibit A

Exhibit A is a video recording of the meeting between Roberts and Defendant Barnes on November 22, 2021 [ECF No. 9-1].  In her complaint, Roberts explicitly references this meeting and alleges

**ROBERTS V. BARNES ET AL.**                                                   **1:22CV65**

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

that she received inadequate process and unequal treatment during
and after.  Roberts alleges that, during this meeting, she was
accused of academic misconduct by Defendant Barnes and reported
similar misconduct of other students to Defendant Barnes, who
failed to follow up investigate.  Further, she contends that it
was Defendant Barnes who determined that she should receive a
failing grade in NSG 714 and that no other individual in the
student conduct process could override her decision.  Accordingly,
Exhibit A is integral to Roberts's complaint and is undoubtedly
relevant to her claims.  The fact that it is a video does not alter
the Court's analysis.  See Zsigray v. Cnty. Comm'n of Lewis Cnty.,
W. Va., 709 F. App'x 178, 179 (4th Cir. 2018).

Notably, as demonstrated by Exhibit A, Roberts made several
statements and admissions during the November 22nd-meeting that
directly contradict her allegations in the complaint.  For example,
Roberts alleges that she used Quizlet only to compensate for audio
issues which she had previously brought to her instructors'
attention and that she did not have prior notice, based on the
applicable policies and syllabus, that using Quizlet in this manner
would be considered academic dishonesty.  But, during the meeting,
Roberts admitted that she used Quizlet to cheat on the second
Shadow Health exam.  Defendant Barnes prompted Roberts to explain
why her answers were nearly identical to the model answers.

**ROBERTS V. BARNES ET AL.**                                               **1:22CV65**

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

Roberts responded that, after another student told her that the exam questions could be found on Quizlet, she located them and copied and pasted the answers into her assessment, changing a few statements into her own words.  She did not mention experiencing any audio issues on the first or second Shadow Health exams.  Instead, she admitted that using Quizlet had been wrong but that she had done so because she needed to pass the exam in a single attempt.  Specifically, Roberts stated:

> I know it's definitely not something that I should have been doing but I think it was just the one attempt made me nervous.  I did try and change somethings. . . .
>
> . . .
>
> I'm very sorry.  It's definitely something that was my fault, so I take full responsibility for it.  But I don't cheat on any other assignments, it's just, it was the one attempt that made me nervous, I guess.

[ECF No. 9-1].  Thus, not only is Exhibit A integral to Roberts's complaint but her admissions therein are also dispositive of at least one of her claims.

###       2.   Exhibits B and C

Exhibit B is a letter to Roberts from the WVU Office of Student Conduct dated May 24, 2022, titled "Notice of Outcome – Determination of Responsibility" [ECF No. 9-2].  Exhibit C is a second letter to Roberts from the WVU Office of Student Conduct

**ROBERTS V. BARNES ET AL.**                                        **1:22CV65**

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

dated June 13, 2022, titled "Notice of Sanctions" [ECF No. 9-3].
Both are integral to Roberts's complaint.

Roberts alleges that the provost referred her appeal to the
Office of Student Conduct for an evidentiary hearing and that this
evidentiary hearing failed to provide adequate process and a
meaningful review of the allegations against her. Id. at ¶¶ 57-
59. Roberts fails to explain, however, that she chose not to
participate in the evidentiary hearing. She also fails to include
that a neutral adjudicator found her responsible for cheating after
conducting two evidentiary hearings. Exhibit B is a letter from
the neutral adjudicator following the first evidentiary hearing,
outlining how the allegations against Roberts proceeded through
the WVUSON and finding her responsible for violating the WVU Policy
on Student Academic Integrity. It also notifies Roberts of a
second hearing on sanctions and gives her an opportunity to submit
evidence for consideration. Exhibit C is a letter from the neutral
adjudicator following the second hearing, finding the previously
imposed sanctions - a failing grade in NSG 714 and dismissal from
the MSN program – appropriate in light of Roberts's misconduct.
Thus, Exhibits B and C describe the process Roberts received
surrounding her dismissal.

Roberts attacks the process afforded to her during these
evidentiary hearings while simultaneously arguing that the Court

12

**ROBERTS V. BARNES ET AL.**                                              **1:22CV65**

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

cannot consider the record from those hearings.  She cannot have it both ways and selectively describe the process she received.  Further, Exhibits B and C represent WVU's final decision to dismiss her from the MSN program and, in seeking reinstatement, she asks the Court to order the Defendants to rescind these exhibits.  They are clearly integral to her complaint.

### 3.   Exhibits D and E

Exhibit D is a copy of the WVU Policy on Student Academic Integrity [ECF No. 9-4].  Exhibit E is a copy of the MSN Student Handbook for the 2021-2022 academic year [ECF No. 9-5].  All of Roberts's claims turn on the Court's interpretation of these policies.  She asks the Court to enter a declaratory judgment finding the policies unconstitutionally vague.  She contends that the policies deprive her of procedural due process because they failed to adequately define "cheating" and notify her that using Quizlet to complete the Shadow Health exam would be considered cheating.  She alleges that the Defendants failed to fulfill their obligations under these policies and applied these policies to her unequally.  Exhibits D and E therefore are integral to Roberts's complaint.  It is inappropriate for Roberts to seek relief from these policies, and selectively quote these policies, while asking the Court not to consider the policies themselves.

**ROBERTS V. BARNES ET AL.**                                                1:22CV65

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

### 4.    Exhibit F

Finally, Exhibit F is a copy of the course syllabus for NSG 714 for the Fall 2021 semester [ECF No. 9-6].  Again, Roberts's claims arise out of her violation of the syllabus.  She cites to and characterizes the syllabus throughout her complaint, arguing that it did not provide sufficient notice regarding the unauthorized use of external resources on the second Shadow Health exam.  It is therefore integral to and explicitly relied on in Roberts's complaint.

### ii.  Roberts raises no credible challenge to the authenticity of the Defendants' exhibits.

The court must also consider whether Roberts can, in good faith, challenge the documents' authenticity.  <u>Zak</u>, 780 F.3d at 606-07.  Federal Rule of Evidence 901 requires that a proponent of evidence produce sufficient evidence to support a finding that the evidence is what the proponent claims it to be.  This is a light burden.  See <u>United States v. Summers</u>, 666 F.3d 192, 201 (4th Cir. 2011) ("The district court's role is merely to act as a gatekeeper for the jury, and the proponent of the evidence need only make a prima facie showing of its authenticity.") (citation omitted). The Court finds that the threshold burden was satisfied here.

Although Roberts would not stipulate to the authenticity of the Defendants' exhibits, she could not articulate any credible

**ROBERTS V. BARNES ET AL.**                                           **1:22CV65**

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

challenge.   A litigant must have a good faith basis for an
authenticity objection; they "cannot challenge or deny the
authenticity of a written agreement that [she] knows to be
authentic." Six v. Generations Fed. Credit Union, 891 F.3d 508,
519 (4th Cir. 2018).   Roberts does not deny that she participated
in the meeting depicted in Exhibit A.   Nor does she contend that
Exhibits B and C are not the letters she received following the
student conduct evidentiary hearings or that Exhibits D, E, and F
were the policies in place during the Fall 2021 semester.
Accordingly, there is no good faith basis for an authenticity
objection.

Moreover, "[w]here plaintiff has actual notice of all the
information in the movant's papers and has relied upon these
documents in framing the complaint, the necessity of translating
a Rule 12(b)(6) motion into one under Rule 56 is largely
dissipated." Jackson v. W. Va. Univ. Hosps., Inc., 2011 WL
1485991, at *5 (N.D.W. Va. Apr. 19, 2011) (quoting Cortec Indus.,
Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)); see
also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d
212, 234 (4th Cir. 2004) (quoting In re Burlington Coat Factory
Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).   Particularly,
when plaintiffs fail "to include matters of which as pleaders they
had notice and which were integral to their claim," such a failure

**ROBERTS V. BARNES ET AL.**                                    **1:22CV65**

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

"may not serve as a means of forestalling the district court's decision on the motion." Lucas v. United Parcel Serv., Inc., 2022 WL 4533787, at *4 (D.S.C. Sept. 2, 2022).  If a court were to forego consideration of a relied upon but not explicitly included document, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Id. (citing Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Here, Roberts had notice of each document attached to the Defendants' motion to dismiss and, so, the need to convert their motion into one for summary judgement is dissipated.  This is especially so given that Roberts's claims are premised on these documents.  She cannot avoid dismissal by failing to attach exhibits that are central to her claims and that she had notice of and relied upon in framing her complaint.

For the reasons discussed, the Court will consider all of the Defendants' supporting exhibits without converting the motion to dismiss into one for summary judgment.

**B.    The Defendants' Motion to Dismiss**

The Court next turns to address the merits of the Defendants' motion to dismiss.

**ROBERTS V. BARNES ET AL.**                                          **1:22CV65**

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION TO DISMISS [ECF NO. 8]**

> **i.    Roberts has failed to state a claim for the violation of her procedural due process rights.**

The Defendants first assert that Roberts has failed to sufficiently allege that her dismissal from the MSN program violated her constitutional right to procedural due process.

"The Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law." Goss v. Lopez, 419 U.S. 565, 572 (1975). Property interests are created and defined by state law. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). Under West Virginia law, procedural due process protects students "against summary expulsion from a State-supported university, since expulsion deprives [her] of protected interests in property and liberty." Syl. Pt. 1, North v. W. Va. Bd. of Regents, 233 S.E.2d 411, 413 (W. Va. 1977).

> [Her] interest in obtaining a higher education with its concomitant economic opportunities, coupled with the obvious monetary expenditure in attaining such education, gives rise to a sufficient property interest to require procedural due process on a removal. From a liberty standard there can be little question that an expulsion from college damages the student's good name, reputation and integrity, even more so than an expulsion from high school. The higher the level of achievement, the greater the loss on removal.

Id. at 415.

Roberts contends she suffered two distinct deprivations of due process: (1) that she was dismissed from the MSN program for

17

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

violating unconstitutionally vague policies, and (2) that the Defendants failed to provide a meaningful opportunity for her to be heard and to review the decisions leading to her dismissal. The Defendants argue that neither theory supports Roberts's due process claims.

> **1. The WVUSON policies are not unconstitutionally vague.**

It is Roberts's position that WVU's academic integrity policies are unconstitutionally vague because they failed to put her on notice that using Quizlet to complete the Shadow Health exams would be considered academic dishonesty. The relevant policies are the WVU Policy on Student Academic Integrity, the MSN Student Handbook, and the NSG 714 syllabus.

The WVU Policy on Student Academic Integrity § 2.1 provides as follows:

> 2.1 Academic Dishonesty: means Plagiarism; Cheating; Fabrication or Falsification; Other Prohibited Academic Conduct; and Facilitation as it relates to academic or educational matters.

> 2.1.2 Cheating: means reliance on unauthorized resources, in connection with examinations or Academic Assignments. It includes but is not limited to: (a) collaboration with peers beyond that authorized by the instructor in the completion of an examination or Academic Assignment; (b) cheating on an examination or Academic Assignment, by either (i) utilizing unauthorized physical or technological resources (e.g., cheat sheets, online resources), or (ii) receiving unauthorized personal assistance (e.g., copying from another student); or (c) the acquisition or use, without

18

**ROBERTS V. BARNES ET AL.**                                                    **1:22CV65**

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION TO DISMISS [ECF NO. 8]**

> permission, of examinations or other academic material
> belonging to a member of the University faculty or staff.

[ECF No. 9-4 at 3-4].  Section 6 of this policy outlines the disciplinary process and notes that dismissal is a potential sanction for academic dishonesty.  Id. at 6-8.

Likewise, the MSN Student Handbook notifies students that:

> **All forms of academic dishonesty are prohibited.**
> Nursing students are expected to act with integrity and
> honesty in all didactic and clinical settings,
> regardless of the nature of the assignment or activity
> or percentage weight toward course grade.  For example,
> the SON places as high an expectation on academic
> integrity for quizzes and short discussion board writing
> submissions as it does for exams or end-of-semester
> papers.

[ECF No. 9-5 at 33 (emphasis in original)].  It references the WVU Policy on Student Academic Integrity and provides examples of academic dishonesty including, but not limited to:

- engaging in any act which may give an unearned advantage in a student's evaluation or performance,

- accessing potential test questions by any means or discussing tested or evaluated materials with others, and

- using unauthorized resources to complete assigned work.

Id.  The MSN Student Handbook emphasizes that students are "strongly encouraged to ask a faculty member or administrator if they are unsure if a practice would be considered academic dishonesty prior to engaging in that practice."  Id.

19

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

Finally, the NSG 714 syllabus contains its own statement on academic integrity [ECF No. 9-6 at 12-14].  It also cites the WVU Policy on Student Academic Integrity and restates most of the MSN Student Handbook policy on academic integrity, including the examples of academic dishonesty.  Id.  But, as noted by Roberts, the syllabus specifically indicates that the course exams are to be "closed-book/closed note" and taken in a lockdown browser but does not contain the same directive for the two Shadow Health exams.  Id. at 8.

Roberts alleges that the WVU Policy on Student Academic Integrity is unconstitutionally vague because, although it forbids the use of "unauthorized physical or technological resources," it does specify which resources are unauthorized [ECF No. 1 at ¶¶ 82-83].  She further alleges that the NSG 714 syllabus does not indicate that Quizlet was an unauthorized resource for the second Shadow Health exam.  Id. at ¶¶ 84-85.  The Defendants contend that this claim must fail because the applicable policies "make clear that a student should not use any resource that an instructor has not advised may be used to their advantage; thus, Plaintiff's conduct was prohibited." [ECF No. 9 at 15].

The void for vagueness doctrine is rooted in the due process clause of the Fifth and Fourteenth Amendments.  Manning v. Caldwell for City of Roanoke, 930 F.3d 264, 272 (4th Cir. 2019).  The

ROBERTS V. BARNES ET AL.                                          1:22CV65

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

primary issue raised by the doctrine is whether the particular
statute is sufficiently definite to give fair notice to one who
would avoid its sanctions.  <u>Williams v. W. Va. Univ. Bd. of
Governors</u>, 782 F. Supp. 2d 219, 226 (N.D.W. Va. 2011), <u>amended in
part</u>, 2011 WL 13308737 (N.D.W. Va. May 19, 2011).

        "To survive a vagueness challenge, a statute must give a
person of ordinary intelligence adequate notice of what conduct is
prohibited and must include sufficient standards to prevent
arbitrary and discriminatory enforcement."  <u>Manning</u>, 930 F.3d at
272.  The degree of vagueness tolerated depends in part on the
type of statute.  <u>Id.</u>  "Given the school's need to be able to
impose disciplinary sanctions for a wide range of unanticipated
conduct disruptive of the educational process, the school
disciplinary rules need not be as detailed as a criminal code which
imposes criminal sanctions."  <u>Bethel Sch. Dist. No. 403 v. Fraser</u>,
478 U.S. 675, 686 (1986).  Courts in this district have found that
the disciplinary rules of a state-supported university violate the
due process clause only if they are "so vague that [ persons] of
common intelligence must necessarily guess at its meaning and
differ as to its application."  <u>Williams</u>, 782 F. Supp. 2d at 226.

        Here, the Court finds that the applicable academic integrity
policies are not unconstitutionally vague because they provide
sufficient guidance to WVU students and officials as to what

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

constitutes cheating.  The WVU Policy on Student Academic Integrity clearly states that cheating includes using any unauthorized resource, i.e., any resource that the instructor has not permitted [ECF No. 9-4 at 3-4].  The MSN Student Handbook and the NSG 714 syllabus further define cheating by providing specific examples, including gaining any unearned advantage, using any resource that has not been authorized, accessing exam questions, and committing plagiarism [ECF Nos. 9-5 at 33; 9-6 at 12-14].  These policies also specify that if a student is unsure whether they can use a particular resource, they should consult a faculty member before using that resource.  Id.

As applied to Roberts, the WVU academic integrity policies are more than clear that accessing exam questions on Quizlet, a resource not authorized by her instructor, and passing them off as her own would be considered cheating.  And if, as she contends, Roberts was unsure whether the second Shadow Health exam was to be completed "closed book/closed note" she bore the burden of seeking clarification prior to using external resources.

Despite her contentions otherwise, schools are not required to preemptively list every possible mechanism for cheating to avoid a vagueness challenge.  Schools must be given wide latitude to address a variety of conduct and respond to emerging trends; thus, their policies need only provide fair notice to students who would

**ROBERTS V. BARNES ET AL.**                                      **1:22CV65**

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

want to avoid sanctions.  Roberts's claims here must fail because
the relevant policies meet this standard.  They are sufficiently
definite to advise students of common intelligence that they cannot
use resources that their instructors have not authorized.

The Court reaches this conclusion despite the fact that the
WVUSON sent a "formal warning" to students in February 2022 stating
it considered Quizlet to be an unauthorized resource.  That,
through Roberts's misconduct, the WVUSON learned that a specific
resource could be used to cheat on the Shadow Health assignments
and warned students against using this resource in the future,
does not change the fact that the WVUSON was not required to
preemptively produce a laundry list of unauthorized resources.

Importantly, Roberts's admissions during her November 22nd
meeting with Defendant Barnes demonstrate that the WVU academic
integrity policies provided sufficient notice to students of
common intelligence that using external resources on the Shadow
Health exams would be considered cheating and refute the
allegations in her complaint.  Because she was worried that she
would not pass the Shadow Health exam on her first attempt, she
copied the model answers from Quizlet.  Her instructor did not
authorize the use of any external resources and so Roberts's use
of Quizlet was prohibited.  When first confronted about her
conduct, she admitted to cheating and to knowing that her use of

**ROBERTS V. BARNES ET AL.**                                              **1:22CV65**

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

Quizlet had been wrong.  Thus, the applicable policies put her on actual notice that copying and pasting answers from a third-party website into her graded assessment would be considered cheating. But now, after learning the consequences of her actions, she contends that she only used Quizlet to compensate for audio issues and that she did not know that using the model answers from an external resource would be considered cheating.

For these reasons, Roberts has failed to state a claim for a violation of her right to procedural due process and the Court grants the Defendants' motion to dismiss on this issue.

> **2.    Roberts has failed to allege that she was denied meaningful process.**

As to Roberts's second theory, that she was not afforded a meaningful review of the allegations against her and the decisions leading to her dismissal, the Court must consider whether she received the due process protections required by state law:

> Before a student can be permanently expelled from a State-supported university, [she] is entitled to the following due process rights: a formal written notice of charges; sufficient opportunity to prepare to rebut the charges; opportunity to have retained counsel at any hearings on the charges, to confront [her] accusers, and to present evidence on [her] own behalf; an unbiased hearing tribunal; and an adequate record of the proceedings.

Syl. Pt. 3, North, 233 S.E.2d at 413.

24

**ROBERTS V. BARNES ET AL.**                                                1:22CV65

### MEMORANDUM OPINION AND ORDER GRANTING
### MOTION TO DISMISS [ECF NO. 8]

Roberts has failed to allege any violation of these protections. According to the complaint, the WVUSON promptly notified Roberts of the academic integrity charges against her. It also provided an opportunity for her to respond to these charges during a meeting with Defendant Burnett, the Assistant Director of the Office of Academic Integrity, in December 2021. Shortly thereafter, she was informed that she had been found responsible for cheating; that she would receive a failing grade on the second Shadow Health exam and a failing grade in NSG 714; and that she could appeal this decision.

The WVUSON then notified Roberts, via letter, that her failing grade in NSG 714 triggered her dismissal from the MSN program. Again, she was given an opportunity to appeal, an option of which she took advantage. Her Level 3 appeal resulted in an evidentiary hearing before a neutral adjudicator.

The Defendants' supporting exhibits also show that Roberts was informed of the hearing and given sufficient opportunity to prepare a defense and retain counsel. She was provided a copy of the evidence to be presented against her in advance of the hearing. Nevertheless, Roberts and her counsel chose not to participate in the evidentiary hearing.

During the hearing on May 11, 2022, a neutral adjudicator heard the testimony of Defendant Barnes and reviewed evidence

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION TO DISMISS [ECF NO. 8]**

submitted by the Defendants, including the model answers to the

Shadow Health exam, Roberts's answers to the Shadow Health exam,

the NSG 714 syllabus, the recording of the November 22nd-meeting

between Roberts and Defendant Barnes, and the letters denying

Roberts's various appeals.  After weighing this evidence, the

neutral adjudicator found that, based upon the preponderance of

the evidence, "[Roberts's] admitted use of Quizlet violated

Section 2.1.2 and 2.1.2(b)(i) of the WVU Policy on Student Academic

Integrity by engaging in acts of academic dishonesty and cheating

on an examination or Academic Assignment, by utilizing

unauthorized physical or technological resources (e.g., cheat

sheets, online resources)" [ECF No. 9-2 at 10].

    Roberts received notice of this outcome and of a second

evidentiary hearing on sanctions.  Again, Roberts and her counsel

chose not to submit any evidence or participate in the sanctions

hearing.  At this hearing, the neutral adjudicator found failure

of NSG 714 and dismissal from the MSN program to be the appropriate

sanctions for Roberts's misconduct.

    Given this history, Roberts's has failed to allege that she

was deprived the procedural due process required by North.  She

was permanently dismissed from the MSN program only after having

received formal written notice of the charges against her; having

sufficient opportunity to prepare and retain counsel; and having

**ROBERTS V. BARNES ET AL.**                                    **1:22CV65**

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION TO DISMISS [ECF NO. 8]**

an opportunity to confront her accuser, present evidence, and create a record before an unbiased hearing tribunal.  Despite this process, she maintains that the evidentiary hearing did not provide meaningful review.

Roberts first contends that none of the decision makers in the appellate process had the authority to overturn Defendant Barnes's decision to impose sanctions in the form of a failing grade on the second Shadow Health exam and in NSG 714.  The record from the evidentiary hearings, however, demonstrates that the neutral adjudicator had the authority to determine, independent of any recommendation from Defendant Barnes, whether Roberts was responsible for cheating and, if so, to determine the appropriate sanction.

Roberts also takes issue with the fact that the neutral adjudicator did not consider certain facts, including that she did not have notice that using Quizlet was prohibited and that other students who used Quizlet were not disciplined.  But Roberts had an opportunity to participate in the evidentiary hearing and present these facts and other evidence.  That she chose not to do so does not result a deprivation of due process.[2]

---

[2] Roberts further contends that she did not have an opportunity to challenge the Defendants' assertions that she would not disclose the identity of any other student who used Quizlet on the second Shadow Health exam.  Again, she had an opportunity to raise this issue.  Nevertheless, that is not a reason for dismissal cited by the neutral adjudicator.

**ROBERTS V. BARNES ET AL.**                                          **1:22CV65**

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

Finally, Roberts asserts that because she was unenrolled from the Spring 2022 semester at the conclusion of her Level 2 appeal, the evidentiary hearing was a post-deprivation proceeding which cannot remedy a due process violation (citing Clarke v. W. Va. Bd. of Regents, 279 S.E.2d 169, 181 n.6 (W. Va. 1981) (holding that generally, "due process requires that the government accord individuals a pre-deprivation review.")). Roberts fails to mention, however, that she was permitted to remain enrolled in the MSN program while she exhausted her appellate rights and that a final unappealable decision was not rendered until June 2022, after two evidentiary hearings.

For these reasons, Roberts has failed to allege that the Defendants denied her a meaningful review of the charges against her and the Court grants the Defendants' motion on this issue.

**3.   Summary**

In sum, the WVU academic integrity policies are not unconstitutionally vague and put Roberts on actual notice that copying and pasting model answers from Quizlet to complete her second Shadow Health exam would be considered cheating. Roberts also received adequate process related to the academic dishonesty charges against her. Because Roberts has failed to state a claim for a deprivation of due process, she is not entitled to a declaration finding the WVU Policy on Student Academic Integrity

**ROBERTS V. BARNES ET AL.**                                                    **1:22CV65**

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION TO DISMISS [ECF NO. 8]**

unconstitutionally vague and the due process claims against the
Defendants in their individual and official capacities must fail.
Accordingly, the Court grants the Defendants' motion on these
issues and dismisses Counts One, Two, and Four.

> **ii. Roberts has failed to allege that she was denied equal**
> **protection under the law.**

Next, Roberts brings a class of one equal protection claim,
alleging that the Defendants "dismissed her for use of a particular
resource in class assignments but failed to sanction or even
investigate other students who used the exact same resource on the
exact same assignment" [ECF No. 13 at 2]. The Defendants contend
that Roberts has failed to state a claim upon which relief may be
granted because she cannot allege that she was treated differently
than any similarly situated student or that the Defendants
intentionally discriminated against her.

The equal protection clause of the Fourteenth Amendment
"secure[s] every person within the State's jurisdiction against
intentional and arbitrary discrimination." Village of Willowbrook
v. Olech, 528 U.S. 562, 564 (2000) (quotation marks and alteration
omitted). "To succeed on an equal protection claim, a plaintiff
must first demonstrate that [s]he has been treated differently
from others with whom [s]he is similarly situated and that the
unequal treatment was the result of intentional or purposeful

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

discrimination." <u>Morrison v. Garraghty</u>, 239 F.3d 648, 654 (4th Cir. 2001).   The court then considers "whether the disparity in treatment can be justified under the requisite level of scrutiny." <u>King v. Rubenstein</u>, 825 F.3d 206, 220 (4th Cir. 2016).   A plaintiff may bring a "class of one" equal protection claim by alleging "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."   <u>Willis v. Town of Marshall, N.C.</u>, 426 F.3d 251, 263 (4th Cir. 2005) (quoting <u>Olech</u>, 528 U.S. at 564); <u>see also</u> <u>Sansotta v. Town of Nags Head</u>, 724 F.3d 533, 542–44 & n.13 (4th Cir. 2013).

To succeed on her equal protection claim, Roberts must allege that the Defendants, without a rational basis, intentionally treated her differently from other students who used Quizlet to cheat on the second Shadow Health exam.   <u>Willis</u>, 426 F.3d at 263. She has failed to do so for two reasons.

First, Roberts has not alleged that there was any other similarly situated student.   The crux of her equal protection claim would be that of all the MSN students who used Quizlet to cheat on the second Shadow Health exam only she was disciplined.   But, in her complaint, Roberts states only that another student knew that the exam questions could be found on Quizlet and that Quizlet possibly could be used to compensate for audio issues.   She does

**ROBERTS V. BARNES ET AL.**                                                                  **1:22CV65**

MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]

not allege that the Defendants knew that any other student had copied and pasted the model answers from Quizlet to complete the exam and admitted that they had done so to their instructor. Therefore, she has not sufficiently pleaded that there is any other similarly situated student treated differently by the Defendants.

Second, even if she could allege that others were similarly situated, Roberts's complaint lacks factual allegations to indicate that the Defendants intentionally or purposefully discriminated against her.  She alleges only that the Defendants failed to act on information she reported and should have "investigated other NSG 714 students in fall 2021 for using Quizlet" [ECF No. 1 at ¶ 51].  But, again, she has not alleged that any other student passed off Quizlet's model answers as their own.  At most, in asserting that the course instructors should have more thoroughly investigated possible cheating, Roberts has alleged negligent disparate treatment, which cannot sustain an equal protection claim.  C & H Co. v. Richardson, 78 F. App'x 894, 902 (4th Cir. 2003) ("[A] plaintiff alleging an Equal Protection violation actionable under § 1983 must establish that the differential treatment it was afforded was intentional, not the result of mere negligence.").

Roberts therefore has failed to plausibly plead a deprivation of her right to equal protection under the law.  The Court grants

**ROBERTS V. BARNES ET AL.**                                                    1:22CV65

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS [ECF NO. 8]**

the Defendants' motion on these issues and dismisses Counts Three and Five for failure to state a claim upon which relief can be granted.

### iii. The Court denies as moot the remainder of the Defendants' motion.

In addition to asserting that Roberts's claims are insufficiently pleaded and lack merit, the Defendants contend that (1) qualified immunity shields them from Roberts's claims against them in their individual capacities; (2) the Eleventh Amendment bars Roberts's claims for monetary relief against them in their official capacity; and (3) Roberts has not pleaded a malicious deprivation of her rights that might entitle her to punitive damages. Based on its rulings herein, the Court **DENIES AS MOOT** the remainder of these arguments.

### III. CONCLUSION

For the reasons discussed, the Court **GRANTS** the Defendants' motion [ECF No. 8] and **DISMISSES** Roberts's claims against them.

It is so **ORDERED.**

The Clerk shall transmit copies of this Order to counsel of record by electronic means.

DATED: May 24, 2023

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA